Felix Luis TORRES, et al.

v.

## BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC., et al.

Court of Appeals of Tennessee,
At Nashville.

March 2, 2016 Session

Filed April 7, 2016

Application for Permission to Appeal
Denied by Supreme Court
August 18, 2016

Donald N. Capparella, Nashville, Tennessee, Steve North, Madison, Tennessee, Robert L. Langdon and Adam W. Graves, Lexington, Missouri, Richard L. Denney and Lydia JoAnn Barrett, Norman, Oklahoma, for the appellants, Felix Luis Torres and Engracia Torres Ojeda.

A. Scott Ross, Nashville, Tennessee, for the appellee, Bridgestone Firestone North American Tire, LLC.

Gregory G. Garre and Roman Martinez, Washington, D.C., and Stephen A. Marcum, Huntsville, Tennessee, for the appellee, Ford Motor Company.

## OPINION

BRANDON O. GIBSON, J., delivered the opinion of the court, in which W. NEAL McBRAYER and KENNY ARMSTRONG, JJ., joined.

Mexican car crash victims filed this lawsuit in Tennessee against the manufacturer of the subject vehicle and the manufacturer of its tires. The original lawsuit was dismissed by this Court in 2003 under the doctrine of *forum non conveniens*. A separate lawsuit was filed in Mexico but ultimately dismissed. The plaintiffs then filed this action in Tennessee. As the case progressed, the parties disputed whether Tennessee law or Mexican law applies to the substantive issues in this case. The trial court ruled that Mexican law applies. The plaintiffs were granted an interlocutory appeal to this Court pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. On appeal, the plaintiffs argue that Tennessee law should apply to the substantive issues in this case because it has the most significant relationship to the litigation. The defendants argue that the choice-of-law issue was resolved in our 2003 opinion and should not be reconsidered due to the doctrine of collateral estoppel. Alternatively, they argue that Mexico has the most significant relationship to the litigation, and therefore, its law should apply. For the following reasons, we conclude that this Court's determination in our 2003 decision regarding the applicable choice-of-law is entitled to preclusive effect. Accordingly, as we concluded in 2003, Mexican law will govern the substantive issues in this case. The trial court's order is affirmed as modified and remanded for further proceedings.

## I. FACTS & PROCEDURAL HISTORY

This case involves a car crash that occurred in Mexico in 2000, when Felix Luis Torres ("Torres") was driving a Ford Explorer with Firestone tires. The accident was allegedly caused by a tire blowout and subsequent vehicle rollover. Torres and another passenger, Engracia Torres Ojeda ("Ojeda"), were injured, and Ms. Ojeda's husband and mother, also passengers, were killed.

In October 2000, Torres and Ojeda (individually and on behalf of her husband and mother) (collectively, "the Torres Plaintiffs") filed a lawsuit in the circuit court for Davidson County, Tennessee, asserting various claims against defendants Ford Motor Company and Bridgestone/Firestone North American Tire, LLC. The complaint alleged claims of negligence, strict liability, violation of the Tennessee Consumer Protection Act, and civil conspiracy. In May 2001, the trial court consolidated this case for pretrial purposes with thirty other cases filed in the circuit court for Davidson County involving Mexican plaintiffs and the defendants Ford Motor Company ("Ford"), Bridgestone/Firestone North American Tire, LLC ("Firestone"), and in some

cases, Bridgestone Corporation. These consolidated cases were styled as *In re: Bridgestone/Firestone & Ford Motor Company Tire Litigation.*

Ford and Firestone moved for dismissal of the cases based on the doctrine of *forum non conveniens.* They claimed that Mexico was the preferable forum in which to conduct the litigation because the cases would be governed by Mexican law, the plaintiffs are Mexican citizens, the accidents occurred in Mexico, the vehicles and tires were purchased in Mexico, and witnesses and medical proof were located in Mexico. In response, the plaintiffs argued that Tennessee was the more appropriate forum and had a more significant connection to the litigation because Firestone maintains its headquarters in Tennessee and Plaintiffs alleged that a conspiracy occurred in Tennessee. The plaintiffs also asserted that Tennessee law should apply to the substantive issues in the case. The trial court denied the defendants' motion to dismiss on the basis of *forum non conveniens,* making two determinative findings. First, the trial court found that Mexico did not provide a truly adequate alternative forum for the cases. Second, the court found that the relevant public and private interest factors did not warrant dismissal under the doctrine of *forum non conveniens.*

This Court granted the defendants' application for extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. We reversed the ruling of the trial court in *In re Bridgestone/Firestone,* 138 S.W.3d 202 (Tenn.Ct.App.2003) (*"Firestone I"*). We explained that a two-part analysis applies when determining whether dismissal is appropriate under the doctrine of *forum non conveniens. Id.* at 205. First, the court must ensure that at least one forum other than the chosen forum is available where the plaintiff may bring the cause of action. *Id.* If such a forum is available, the court must then consider a series of public and private interest factors that guide the court's decision on whether dismissal is appropriate.[1] *Id.*

Regarding the first step of the analysis, we held that the trial court erred in finding that Mexico was not a "truly adequate" alternative forum. *Id.* at 205. We explained that the focus of the inquiry is on the *availability* of the forum, not its perceived *adequacy. Id.* at 206. Because Ford and Firestone consented to waive any jurisdictional defenses if the plaintiffs filed suit in Mexico, we concluded that Mexico provided an *available* alternative forum. *Id.* at 207.

Moving to the second step, we considered the various factors concerning private and public interests that may warrant dismissal. We concluded that the private factors did not warrant dismissal because the trials promised to be costly and time-consuming regardless of the location of the forum. *Id.* However, we concluded that the relevant public interest factors weighed strongly in favor of litigating in Mexico. Specifically, we concluded that the trial court did not properly consider the difficulties that would arise from applying Mexican law to the cases, the burden that would be imposed on the citizens of Davidson County by empaneling multiple juries, and Mexico's overwhelming interest in adjudicating localized controversies involving accidents that occurred within its borders and injured its citizens.

---

1. These factors were initially set forth by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and they were adopted by the Tennessee Supreme Court in *Zurick v. Inman,* 221 Tenn. 393, 426 S.W.2d 767 (1968). *Firestone I,* 138 S.W.3d at 205–06.

*Id.* at 208–209. As such, we reversed the trial court's ruling and dismissed the consolidated cases on the basis of *forum non conveniens. Id.* at 210. The plaintiffs sought permission to appeal from the Tennessee Supreme Court, but their application was denied on June 1, 2004.

Thereafter, the Torres Plaintiffs and numerous other plaintiffs filed separate lawsuits in Mexico. All of the Mexican lawsuits were dismissed. On May 26, 2005, the Torres Plaintiffs filed this lawsuit in the circuit court of Davidson County. Twenty-five similar lawsuits were filed by other Mexican plaintiffs in the same court. The cases were again consolidated for pretrial purposes under the style *In Re: Bridgestone Firestone & Ford Motor Company.*

The defendants filed motions to dismiss the consolidated litigation on the basis of collateral estoppel. They argued that the issues of *forum non conveniens,* and specifically, the availability of Mexico as an available alternative forum, had been determined in their favor in *Firestone I.* Accordingly, the defendants argued that the doctrine of collateral estoppel precluded the plaintiffs from claiming that a Mexican forum was unavailable. The trial court denied the motions to dismiss, finding that Mexico was not, in fact, an available forum, as evidenced by the numerous dismissals by the Mexican tribunals. The trial court concluded that collateral estoppel was inapplicable because the issue of Mexico's availability as an alternative forum was not "conclusively decided" by this Court in *Firestone I.*

The defendants were granted permission for an interlocutory appeal. In *In re Bridgestone/Firestone,* 286 S.W.3d 898, 900 (Tenn.Ct.App.2008) (*"Firestone II"*), this Court considered the preclusive effect of the *forum non conveniens* dismissal in *Firestone I.* We explained that under the

doctrine of issue preclusion, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment ... the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Firestone II,* 286 S.W.3d at 904 (quoting Restatement (Second) of Judgments § 27 (1982)). We reiterated that we were considering the principle of issue preclusion applied in the context of a prior dismissal on the basis of *forum non conveniens. Id.* We found no Tennessee decisions in which a dismissal on the basis of *forum non conveniens* had preclusive effect on a subsequent case. *Id.* at 905. However, we found guidance from other jurisdictions. "In general," we explained, " '[a] prior *forum non conveniens* dismissal precludes relitigation between the parties of those issues of law and fact actually litigated and necessary to the dismissal decision." *Id.* (quoting *Alcantara v. Boeing Co.,* 41 Wash.App. 675, 705 P.2d 1222, 1225 (1985) (citations and footnote omitted); *see also Mizokami Bros. of Ariz. v. Mobay Chem. Corp.,* 660 F.2d 712, 715–16 (8th Cir.1981) (citations omitted); *Ex parte Ford Motor Credit Co.,* 772 So.2d 437, 442 (Ala.2000); *Saudi Am. Bank v. Azhari,* 460 N.W.2d 90, 92 (Minn.Ct.App.1990) (citation omitted)). "[I]f the objective legal criteria and the underlying material facts in the prior ... determinations were identical, then the prior court's decision precluded the relitigation of the same *forum non conveniens* issue." *Id.* (quoting *Alcantara,* 705 P.2d at 1226).

The *Firestone II* court noted the court's explicit conclusion in *Firestone I* that " 'the courts of Mexico are available to adjudicate the instant cases.' " *Id.* at 906 (quoting *Firestone I,* 138 S.W.3d at 207). The *Firestone II* court also determined that the finding in *Firestone I* that the Mexican courts were an available alternative forum

was necessary for the dismissal on the basis of *forum non conveniens*. *Id.* As such, the court concluded that "issue preclusion can apply to the findings underlying a dismissal on the basis of *forum non conveniens*, and in particular can apply to a finding that an alternate forum is available." *Id.* at 909. Nevertheless, the court noted that some courts decline to apply issue preclusion in the face of an alleged change in the material facts underlying the prior determination. *Id.* at 907. The court explained that "were it not for the proceedings in Mexico resulting in dismissal of the Plaintiffs' cases, we would grant the relief sought by the Defendants and hold, as a matter law, that our prior decision precludes re-litigation of the issue of the availability of Mexico as an alternate forum." *Id.* at 909. However, acknowledging that issue preclusion is an equitable doctrine grounded on considerations of fairness and efficiency, the court found it unfair to overlook the claims that were filed and dismissed in Mexico, which seemed to indicate that the plaintiffs had no forum in which to seek compensation for their injuries. *Id.* at 905, 908. The *Firestone II* court vacated the trial court's order denying the defendants' motions to dismiss on the basis of collateral estoppel and remanded for the trial court to thoroughly explore the circumstances surrounding the proceedings in Mexico to consider whether the plaintiffs acted in good faith in the Mexican proceedings, whether the Mexican proceedings were manipulated to achieve dismissal by the Mexican courts, and whether the Mexican court decisions were entitled to recognition. *Id.* at 909. The trial court was also permitted to consider whether the dismissal of the plaintiffs' claims in Mexico was foreseeable. *Id.* The *Firestone II* court explained that if the trial court found that the decisions of the Mexican courts should not be recognized, the trial court was authorized to hold that the plaintiffs were precluded from relitigating the issue of the availability of Mexico as an alternate forum, and the court could dismiss the lawsuits on that basis. *Id.*

On remand after *Firestone II*, the parties engaged in exhaustive discovery regarding the proceedings in Mexico, and the trial court held a four-day evidentiary hearing on the matter. The trial court ultimately concluded that some of the plaintiffs in the twenty-six consolidated cases failed to act in good faith by manipulating the Mexican courts to obtain the dismissals of their lawsuits. The trial court granted the defendants' motions to dismiss, on the basis of collateral estoppel, in eight cases in which it found bad faith. However, the court found no evidence of bad faith in the remaining cases.[2] The court concluded that the Mexican dismissals in those cases were entitled to recognition, and they provided direct evidence that Mexico did not offer an available alternative forum. Finally, the trial court considered whether it was or should have been foreseeable to the plaintiffs during the initial proceedings that Mexico was not an available forum, such that they waived the argument by not raising it at that time. The trial court held that it was not foreseeable. Accordingly, the trial court denied the motions to dismiss the remaining eighteen cases, including the Torres case that is at issue on appeal, and litigation continued in those cases.

This Court affirmed the dismissal of the eight cases involving bad faith in *Ramirez v. Bridgestone/Firestone, Inc.*, 414 S.W.3d

---

**2.** The trial court found that "in non-contractual matters such as these, Mexican courts will not accept competencia or jurisdiction over foreign defendants who are not domiciled within the territory of the court, even if they expressly submit to such jurisdiction."

707 (Tenn.Ct.App.2013). Based on language in our *Ramirez* opinion regarding the foreseeability of the dismissals in Mexico, the defendants renewed their motion to dismiss the remainder of the plaintiffs' still-pending cases in circuit court on the basis of collateral estoppel. The trial court granted the renewed motion; however, on appeal, this Court reversed. We again held that "the doctrine of collateral estoppel is applicable to the *forum non conveniens* dismissals in these cases." *In re Bridgestone/Firestone*, No. M2013–02849–COA–R3–CV, 495 S.W.3d 257, 2015 WL 3623591, at *7 (Tenn.Ct.App. June 10, 2015), *perm. app. denied* (Tenn. Nov. 24, 2015) ("*Firestone III* "). However, we concluded that an another exception to the application of collateral estoppel might apply, specifically an apparent intervening change in the applicable legal context. *Id.* at 271, at *9. We remanded the remaining cases for further proceedings.

As the remaining cases approached their scheduled trial dates, the defendants in the Torres case filed a motion to apply the law of the Mexican state of Guanajuato, where the Torres accident occurred. The defendants argued that the choice-of-law issue had already been resolved by this Court in *Firestone I*, as this Court stated, in the context of its *forum non conveniens* analysis, that "Mexican law will govern all substantive issues" in the cases. *See Firestone I*, 138 S.W.3d at 210. Alternatively, the defendants argued that if the trial court conducted the choice-of-law analysis anew, the result would be the same—Mexican law would apply because it has the most significant relationship to the occurrence and the parties under the choice-of-law test set forth in *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn.1992). In response, the Torres Plaintiffs argued that Tennessee has the most significant relationship to the occurrence and the parties under *Hataway*, and therefore, its law should apply to the substantive issues in this case.

After a hearing, the trial court entered an order granting the defendants' motion for application of the law of Guanajuato, Mexico. The trial court acknowledged that "the choice of law question was a factor" in this Court's decision in *Firestone I*, but the trial court concluded that collateral estoppel did not apply and that "[t]he statements contained in the Court of Appeals' 2003 opinion relating to the choice of law questions are not binding." The trial court conducted its own analysis of the choice-of-law issue using the principles set forth in *Hataway* and concluded that Mexican law would apply to the substantive issues in the case, as Mexico had the most significant relationship to the occurrence and the parties.

The trial court granted permission for the Torres Plaintiffs to seek an interlocutory appeal, and this Court granted the application on March 14, 2013.

## II. ISSUES PRESENTED

The Torres Plaintiffs raise the following issues, which we have slightly restated, for review on appeal:

1. Whether the trial court erred in its choice of law analysis by determining that Mexican law should be applied to this case;

2. Whether the law of Guanajuato, Articles 1405 and 1406, should be controlling on the determination of damages; and

3. Whether there is a "false conflict" between the Law of Guanajuato, Article 1399, and the "pre-comparative fault" negligence law of Tennessee, and therefore, the "pre-comparative fault" law of Tennessee should be applied to the liability portion of this case.

In response to these arguments, the defendants assert that this Court's choice-of-law analysis in *Firestone I* is entitled to recognition under the principles of collateral estoppel and that the issue is not subject to reconsideration. Alternatively, the defendants argue that the trial court correctly concluded that Mexican law should apply because Mexico has the most significant relationship to this litigation.

For the following reasons, we affirm the decision of the circuit court as modified and remand for further proceedings.

### III. Standard of Review

The dispositive issue on appeal involves collateral estoppel. Whether collateral estoppel applies is a question of law. *Wilkerson v. Leath*, No. E2011–00467–COA–R3–CV, 2012 WL 2361972, at *4 (Tenn.Ct.App. June 22, 2012), *perm. app. denied* (Tenn. Nov. 21, 2012) (citing *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn.2009)). Appellate courts review a trial court's conclusions on questions of law *de novo* with no presumption of correctness. *Friedmann v. Marshall Cnty., Tenn.*, 471 S.W.3d 427, 432 (Tenn.Ct.App. 2015) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000)).

### IV. Discussion

On appeal, the Torres Plaintiffs argue that Tennessee has the most significant relationship to this litigation, and therefore, its law should apply under the principles set forth in *Hataway*. However, the first issue we address on appeal is whether the choice-of-law issue is even subject to decision in this appeal considering this Court's previous decision in *Firestone I*. As the procedural history of this case demonstrates, we are not working with a blank slate. This is the fifth appeal to this Court involving the *Firestone* litigation. Notably, several of the previous appeals have specifically considered the preclusive effect of this Court's decision in *Firestone I*.

To briefly review, in *Firestone I*, the basic issue was whether the consolidated cases should be dismissed under the doctrine of *forum non conveniens*. One of the factors to be considered in the *forum non conveniens* analysis is the public interest in having the trial of a case " 'in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.' " *Zurick*, 426 S.W.2d at 772 (quoting *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839). As such, in *Firestone I*, this Court stated:

> The lower court erred in three respects regarding the public interest factors. First, the court failed to give proper consideration to the difficulties posed by the application of Mexican law. The lower court merely stated that "the application of foreign law in these cases, if required, does not present such a formidable obstacle as to require dismissal." We disagree.

> We note, as an initial matter, that Mexican law will almost certainly be the controlling substantive law in these cases. Tennessee choice-of-law principles were most recently updated in *Hataway v. McKinley*, 830 S.W.2d 53 (Tenn. 1992). In that case, the Tennessee Supreme Court adopted the "most significant relationship" approach enumerated by the Restatement (Second) of Conflict of Laws. *Id.* at 54. According to this theory, the law of the jurisdiction where the injury or accident occurred will apply unless another jurisdiction has a more significant relationship to the litigation. *Id.* at 59. In the present matter, the accidents and injuries all occurred in Mexico. Thus, Mexican law will apply unless another jurisdiction has

a more significant relationship to the litigation. Tennessee cannot be said to have a more significant relationship, nor can any other jurisdiction. Tennessee's only link to the litigation is Firestone's maintenance of its principal place of business in Davidson County and the conspiratorial activities that allegedly took place therein. Mexico has more numerous, and more significant, links to the instant cases. It is the site of the accidents, the residence of all plaintiffs, and the center of the relationships between all parties. Tennessee's tenuous links to the litigation are simply insufficient to overcome the default rule that Mexico, as the situs of the accidents at issue, will provide the applicable law.

We must now evaluate the difficulties that will arise from the application of Mexican law by Tennessee courts. The relevant rule in a *forum non conveniens* analysis is that "the application of the laws of another state becomes a factor when it is shown that the laws of the foreign state, applicable to the case, are so materially different from our own that their application would present difficulty to the court." *Zurick*, 426 S.W.2d at 774; *Smith v. Priority Transp., Inc.*, No. 02A01–9203–CV–00074, 1993 WL 29021 at *4 (Tenn.Ct. App. Feb. 9, 1993). There can be little doubt that the laws of Mexico are materially different from those of Tennessee.... If Tennessee courts were to try the instant cases, they would be forced, as an initial matter, to obtain reliable English translations of the relevant Mexican statutes, which are written in Spanish.... The problem is also exacerbated in the instant matter by the sheer multiplicity of statutes that Tennessee courts will be forced to interpret.... In the present cases, the record indicates that the accidents occurred in at least eleven different Mexican states. It follows, then, that at least eleven different sources of statutory authority would have to be interpreted by Tennessee courts.... Under such circumstances, it is better to allow the foreign jurisdiction, well-versed in its own law, to try the matter....

The lower court also erred when it failed to consider the burden posed by jury duty upon the citizens of Davidson County. As already stated, the trial of these cases will involve the civil codes of at least eleven different Mexican states. This means that the cases would not likely be consolidated into a single action for trial, given the substantial likelihood of jury confusion arising from the multiplicity of statutory schemes. It follows that multiple juries would have to be empaneled, increasing the burden upon the community of Davidson County. This burden does not seem warranted, considering that Davidson County's only link to the litigation is Firestone's alleged conspiratorial activity. By contrast, Mexico is linked to the current litigation by almost every critical event at issue. As such, the public interest factor regarding jury duty would seem to favor dismissal.

...In the present matter, all the deceased were from Mexico; all the plaintiffs are from Mexico; the cars and tires at issue were purchased in Mexico; the cars and tires at issue were serviced and maintained in Mexico; the accidents all occurred in Mexico; and Mexican law will govern all substantive issues. In short, the present litigation is of primary local interest to Mexico, rather than Tennessee.

*Firestone I*, 138 S.W.3d at 208–10.

In *Firestone II*, we considered the preclusive effect of the *forum non*

*conveniens* dismissal in *Firestone I*.[3] Relevant to this appeal, we explained that under the doctrine of issue preclusion, also known as collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment ... the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim," *Firestone II*, 286 S.W.3d at 904 (quoting Restatement (Second) of Judgments § 27 (1982)). Stated differently, "collateral estoppel precludes relitigation of an issue that was determined by an earlier judgment on a different claim."[4] *Id.* at 904 n. 8. For purposes of this appeal, then, it is not determinative that *Firestone I* considered the choice-of-law issue in the context of a *forum non conveniens* analysis and the present appeal involves the defendants' motion to apply the law of Mexico. Collateral estoppel applies " 'when it affirmatively appears that the issue involved in the case under consideration has already been litigated in a prior suit between the same parties, even though based upon a different cause of action, if the determination of such issue in the former action was necessary to the judgment.' " *Clark v. Sputniks, LLC*, 368 S.W.3d 431, 437 (Tenn. 2012) (quoting *Home Ins. Co. v. Leinart*, 698 S.W.2d 335, 336 (Tenn.1985)).

In *Firestone III*, we explained that collateral estoppel renders the determination of a particular issue of law or fact conclusive on the parties "where it has previously been 'actually or necessarily determined by a court of competent jurisdiction.' " *Firestone III*, 495 S.W.3d at 267, 2015 WL 3623591, at *6 (quoting *State ex rel. Cihlar v. Crawford*, 39 S.W.3d 172, 178–79 (Tenn.Ct.App.2000)). In order to prevail on a collateral estoppel claim, the party seeking preclusion must demonstrate:

(1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.[5]

*Id.* (quoting *Mullins*, 294 S.W.3d at 535). We conclude that each of these elements exists in the present case. The particular issue raised in this appeal is identical to an issue decided by this Court

---

**3.** As noted above, the *Firestone II* opinion considered the preclusive effect of the decision in *Firestone I* with regard to the availability of Mexico as an alternative forum (another element of the *forum non conveniens* analysis). However, the same general principles are instructive in this case.

**4.** The terms issue preclusion and collateral estoppel are used interchangeably. *Firestone III*, 495 S.W.3d at 262, 2015 WL 3623591, at *2 n. 5. Policy considerations warranting the application of collateral estoppel include the promotion of finality in the litigation, the conservation of judicial resources, and the pre-

vention of inconsistent decisions. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn.2009).

**5.** In *Firestone III*, the Court concluded that all of these elements were present regarding the *forum non conveniens* element of availability of the Mexican forum, addressed in *Firestone I*, and therefore, "the doctrine of collateral estoppel is applicable to the *forum non conveniens* dismissals in these cases." *Firestone III*, 495 S.W.3d at 269, 2015 WL 3623591, at *7. However, an equitable exception applied. In this appeal, the Torres Plaintiffs have not demonstrated that an equitable exception applies.

in *Firestone I*—whether the law of Mexico or the law of Tennessee applies to this case under the principles set forth in *Hataway*. Second, the choice-of-law issue was "actually raised, litigated, and decided on the merits" in *Firestone I*. In fact, the issue was "raised" and "litigated" in the trial court and on appeal. In the defendants' 2001 motion to dismiss on the basis of *forum non conveniens*, filed in the trial court before *Firestone I*, the defendants argued that Mexican law would govern the case and included a detailed analysis of the *Hataway* issue. In their response, the plaintiffs noted the defendants' "tremendous amount of discussion to the question of what law would be applied in these cases" and agreed that "this is a proper factor for the court to consider." The plaintiffs suggested that Tennessee law would apply under *Hataway* because, according to the plaintiffs, Tennessee had the most significant connection to the litigation. The trial court did not definitively rule on the choice of law issue and concluded that applying Mexican law, "if required," would not pose a problem. On appeal in *Firestone I*, the defendants again thoroughly briefed the choice of law issue. The plaintiffs' brief noted the tremendous amount of discussion [in the defendants' brief] to the question of what law would be applied[.] The plaintiffs stated that the choice-of-law issue "has been briefed but not yet decided" but also acknowledged

that it was a "proper factor for the Court to consider."

▊ The choice-of-law issue was "decided on the merits" in *Firestone I*.[6] Even though we "note[d], as an initial matter, that Mexican law [would] almost certainly be the controlling substantive law in these cases," *Firestone I*, 138 S.W.3d at 208, we went on to discuss the applicable principles set forth in *Hataway* and reach a conclusion as to that issue. We concluded that "Tennessee's tenuous links to the litigation are simply insufficient to overcome the default rule that Mexico, as the situs of the accidents at issue, will provide the applicable law." *Id.* We stated unequivocally that "Mexican law will govern all substantive issues." *Id.* at 210. Notably, we recognized this conclusion in *Firestone III*, when we described *Firestone I*'s reliance on "the difficulty our courts would face in interpreting Mexican law *that would be applicable to the cases*." *Firestone III*, 495 S.W.3d at 262, 2015 WL 3623591, at *2 (emphasis added). We reject the suggestion of the Torres Plaintiffs that our discussion of the choice-of-law issue in *Firestone I* was "not germane to this Court's holding."

▊ As for the third factor, the decision in *Firestone I* became final when the Tennessee Supreme Court denied permission to appeal. Fourth, the Torres Plaintiffs were parties to the consolidated litigation at issue in *Firestone I*. And finally,

---

**6.** The application of collateral estoppel is not hampered by the fact that the trial court did not definitively make a choice-of-law ruling, but the Court of Appeals did. We encountered the same issue in *Firestone II* when considering the preclusive effect of the decision in *Firestone I* regarding the availability of the Mexican forum. We said:

We find that issue preclusion can apply to the findings underlying a dismissal on the basis of *forum non conveniens*, and in particular can apply to a finding that an alter-

nate forum is available. In this case, the finding of an available alternate forum was not made by the trial court; rather, it was made by the appellate court based on the record, after rejection of the trial court's reason for denying the Defendants' motion to dismiss. Nevertheless, the finding was necessary to the appellate court's dismissal of the lawsuit on the basis of *forum non conveniens*, and can have preclusive effect in a subsequent action....

*Firestone II*, 286 S.W.3d at 909.

the Torres Plaintiffs had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded. They were on notice that the choice-of-law issue was raised due to the "tremendous" amount of briefing by the defendants, they acknowledged that the choice-of-law issue was a proper factor for the Court to consider, and they argued their position that Tennessee law should apply because it had the most significant relationship to the parties. Thus, each of the five factors support the application of collateral estoppel.

■ As we noted in *Firestone II*, "issue preclusion can apply to the findings underlying a dismissal on the basis of *forum non conveniens*." *Firestone II*, 286 S.W.3d at 909. Specifically, "'[a] prior *forum non conveniens* dismissal precludes relitigation between the parties of those issues of law and fact actually litigated and necessary to the dismissal decision." *Id.* (quoting *Alcantara*, 705 P.2d at 1225). "[I]f the objective legal criteria and the underlying material facts in the prior ... determinations were identical, then the prior court's decision preclude[s] the relitigation of the same *forum non conveniens* issue." *Id.* (quoting *Alcantara*, 705 P.2d at 1226). The underlying material facts with respect to the choice-of-law issue have not changed, and the choice-of-law issue was one of the objective legal criteria determined by the Court in *Firestone I*. In addition, the choice-of-law determination was necessary to this Court's disposition in *Firestone I*. *See Pantuso v. Wright Med. Tech. Inc.*, 485 S.W.3d 883, 888–89 (Tenn. Ct.App.2015), perm. app. denied (Tenn. Jan. 14, 2016) (in the forum non conveniens analysis, "the public factors that must be considered include: (1) whether a Tennessee court will be required to apply the law of another forum").

In summary, we conclude that where a choice-of-law issue is raised, litigated, and decided on the merits by a court of competent jurisdiction in the context of a forum non conveniens analysis, collateral estoppel precludes relitigation of the issue. *See, e.g., Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 680 (5th Cir.2003) (concluding that a choice-of-law determination was a necessary part of a *forum non conveniens* dismissal, and because the choice of law issue was "distinctly put in issue, litigated, and determined in the former action," the doctrine of issue preclusion was triggered) (internal quotation omitted).

We decline to re-examine the *Hataway* analysis in this appeal. As we held in *Firestone I*, "Mexican law will govern all substantive issues" in this case. *Firestone I*, 138 S.W.3d at 210. We modify the trial court's order to remove its holding that the doctrine of collateral estoppel was inapplicable and that the *Hataway* analysis was subject to reconsideration. However, we agree with the result reached by the trial court, *i.e.*, that Mexican law applies to the issues in this case, and we affirm the trial court's order as modified. *See Arnold v. City of Chattanooga*, 19 S.W.3d 779, 789 (Tenn.Ct.App.1999) ("Where the Trial Judge reaches the correct result for the wrong reason we will affirm.").

■ We note that the Torres Plaintiffs present another issue on appeal regarding the substance of the Mexican law to be applied. In the trial court's March 7, 2013 order on the defendants' motion to apply Mexican law, the court announced its decision that Mexican law would apply to this case and then stated:

Having determined that Mexican law derived from the Civil Code of Guanajuato should be applied in this case; the Court must now decide what is the substance of that law. The Court further finds

that the language of the law of Guanajuato is very similar to that of San Luis Potosi. Therefore, the prior ruling of this Court in case # 05C1555 regarding the substance of the law to be applied seems to be applicable in this case. The Court invites the parties to point out any distinguishable differences at the Pre-Trial Conference to be conducted March 7, 2013.

In the trial court's subsequent order granting permission for the Torres Plaintiffs to seek an interlocutory appeal, the court said it "considered" certain issues when granting permission to seek an interlocutory appeal, and one of those issues was "Whether there is a 'false conflict' between the Law of Guanajuato, Article 1399, and the 'pre-comparative fault' negligence law of Tennessee and that, therefore, the 'pre-comparative fault' law of Tennessee should be applied to the liability portion of this case." However, our order granting permission to seek an interlocutory appeal did not list any specific issues for review.

 Having considered the procedural posture of this case and the trial court's rulings in its March 7, 2013 order, we conclude that any consideration by this Court of the substance of Mexican law would be premature and constitute an ad-

visory opinion. Appellate courts do not render advisory opinions and will not decide theoretical issues based on contingencies that may or may not arise. *City of Memphis v. Shelby Cnty. Election Comm'n,* 146 S.W.3d 531, 539 (Tenn.2004). " 'In an interlocutory appeal, as well as in an appeal as of right, the appellate court considers only questions that were actually adjudicated by the trial court. To do otherwise would render the interlocutory appeal a request for an advisory opinion.' " *Akridge v. Fathom, Inc.,* No. E2014–00711–COA–R9–CV, 2015 WL 97946, at *7 (Tenn.Ct.App. Jan. 7, 2015) (*no perm. app. filed*) (quoting *Shaffer v. Memphis Airport Auth., Serv. Mgmt. Sys., Inc.,* No. W2012–00237–COA–R9–CV, 2013 WL 209309 at *4 (Tenn.Ct.App. Jan. 18, 2013)) (internal citations omitted). Here, the trial court granted the Torres Plaintiffs' "motion to seek permission to file an Interlocutory Appeal from the Order entered March 7, 2013." That order did not contain any ruling regarding the substance of the law to be applied. It did not discuss or even mention the issue framed on appeal regarding the existence of a false conflict with pre-comparative fault law of Tennessee. Therefore, we will not review the issue on appeal.[7]

---

7. The Torres Plaintiffs also argue in their reply brief that the issue of collateral estoppel is not properly before this Court because it was not listed by the trial court as one of the issues "considered" for appeal. We recognize that "the questions this Court may address when considering an interlocutory appeal are limited to 'those matters clearly embraced within' the issues certified in the orders of the trial court and the intermediate appellate court. *Sneed v. City of Red Bank, Tenn.,* 459 S.W.3d 17, 22 (Tenn.2014). However, this Court's order granting the interlocutory appeal did not list the particular issues to be reviewed. The trial court's order simply stated that it consider[ed] these general issues in granting Plaintiffs permission to appeal." One of those issues was

"Whether, in its choice of law analysis, the Court erred in [ ] determining that Mexican law should be applied to this case." On appeal, the Torres Plaintiffs and the trial court have asked this Court to review the trial court's March 7, 2013 order and to decide whether the trial court erred in ruling that Mexican law should apply to this case. From the outset, the defendants have asserted that Mexican law should apply because the issue was already resolved in *Firestone I,* and the previous choice-of-law decision is entitled to recognition under the doctrine of collateral estoppel. Considering the basis for the defendants' underlying motion to apply Mexican law, the parties' arguments throughout the proceedings, and the trial

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby affirmed as modified and remanded for further proceedings. Costs of this appeal are taxed to the appellants, Felix Luis Torres and Engracia Torres Ojeda, and their surety, for which execution may issue if necessary.

court's rulings in its March 7, 2013 order, we conclude that the issues certified on appeal encompass the trial court's ruling on collateral estoppel.